IN THE UNITED STATES DISTRICT COURT FOR **RECEIVED**
THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

APR 09 2020

US DISTRICT COURT
MID DIST TENN

| | | |
|---|---|---|
| Derrick Wilkins | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: __ |
| | ) | |
| CoreCivic, Inc. | ) | Judge Waverly D. Crenshaw Jr. |
| | ) | |
| and | ) | HON. |
| CoreCivic of Tennessee LLC: | ) | ~presiding |
| | ) | |
| and | ) | |
| Correct Care Solutions LLC: | ) | |
| | ) | |
| and | ) | |
| Yolanda Pittman; | ) | |
| | ) | |
| and | ) | |
| Russell Washburn: | ) | |
| | ) | |
| and | ) | |
| Cynthia Pratt; | ) | |
| | ) | |
| and | ) | |
| Jacinda Sanders | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now the Plaintiff, Derrick Wilkins, Prose, and for cause of action against the Defendants would respectfully state as follows:

### I    INTRODUCTION

Plaintiff, Derrick Wilkins ("Mr. Wilkins") brings this action because he was the victim of sexual abuse by a prison guard at the Trousdale Turner Correctional Center.

("Trousdale Turner"). He claims injuries he suffered there from and for the violations of his civil rights as guaranteed by the United States Constitution, the Tennessee Constitution, Tennessee Common Law and Statutes.

Defendant Jacinda Sue Sanders ("Sanders") was a prison guard who engaged in sexual assault, abuse and harassment of male inmates, including but not limited to Mr. Wilkins, utilizing her authority as a correctional officer employed by CoreCivc. CoreCivic LLC, to force sexual intercourse, anal intercourse, oral sexual acts, sexual touching, voyeurism, invasion of personal privacy, demeaning sexual comments and intimidation to deter her victims from reporting such sexual misconduct. Defendants also include supervisors at Trousdale Turner and at the highest levels of Trousdale Turner ("Supervisory Defendants") who maintain policies and practices which enable female staff to engage in the sexual assault, abuse and harassment of male inmates, including but not limited to Mr. Wilkins, despite the known and obvious risks associated with assigning female staff to male prisons and in the face of historical and continued evidence of sexual misconduct by their female staff. A Prison Rape Elimination Act on-site PREA audit of CoreCivc-Trousdale Turner Correctional Center was conducted July 31-August 1, 2017, with follow-up visits to the facility on November 27,2017 and February 5, 2018. In the twelve months preceding the audit and always relevant to this complaint, CoreCivc-Trousdale Turner Correctional Center had received a total of twenty-six PREA complaints, nine of which involved female staff, broken down as follows:

| 12 | Sexual Abuse (Contact and/or Penetration) | Inmate |
|----|-------------------------------------------|--------|
| 3  | Sexual Abuse (Intentional Touching)       | Inmate |
| 2  | Sexual Harassment                         | Inmate |
| 2  | Sexual Abuse (Intentional Touching)       | Staff  |

2 |

whom she had sexual intercourse with to keep from being segregated or being transferred to a higher level of security where the inmates would be confined to their cells for most of their time.



The officer below, Janel Sands, 26 was even caught having sex in bed inside an inmate's cell. Ms. Sands had a lengthy history of female guard-male prisoner sex dating back to when she resigned from an Australian jail after being caught smuggling and sleeping with prisoners.



4 |

1       Plaintiff, Derrick Wilkins, is a resident of Trousdale County, Tennessee. He is presently, and always relevant to this complaint, was incarcerated at the Trousdale Turner Correctional at 140 Macon Way, Hartsville, Tennessee.

2       Defendant CoreCivic, Inc., a Maryland corporation, is a publicly traded company on the New York stock exchange. Through subsidiary entities, it owns and operates prisons throughout the United States, including the Trousdale Turner Correctional Center ('Trousdale Turner") in Trousdale County, Tennessee. CoreCivic, Inc. provides direct oversight, management services, and budgeting controls to each of its prison facilities, including Trousdale Turner. Additionally, CoreCivic, Inc. sets policies, customs, and procedures regarding the treatment and care of inmates that are applicable to all its prison facilities, including Trousdale Turner.

3       Defendant CoreCivic of Tennessee, LLC, owns and operates the Trousdale Turner Correctional Center under contract with the State of Tennessee and/or Trousdale County, Tennessee, housing prisoners sentenced to confinement in the Department of Correction. Upon information and belief, CoreCivic of Tennessee, LLC is owned by CoreCivic Inc.

4       Defendant CoreCivic, Inc. and Defendant CoreCivic of Tennessee, LLC collectively will be referred to herein as "CoreCivic".

5       Because Defendant CoreCivic operates a prison housing individual under confinement by Tennessee's Department of Corrections, it performs a public function traditionally reserved to the state and is therefore subject to suit under 42 U.S.C § 1983.

6       Defendant CoreCivic always mentioned herein was responsible for the establishment of policies either formally or by custom and was responsible for the employment, training, supervision and conduct of the officers and employees of Trousdale Turner.

6 |

10    Upon information and belief, Defendant Cynthia Pratt always relevant herein was Health Services Administrator at Trousdale Turner as an employee of Defendant CCS. As such, she was responsible for the administration of health services at Trousdale Turner to inmates including Derrick Wilkins, including setting policies and customs, ensuring such policies and customs were being followed, and supervising CoreCivic and CCS employees to ensure inmates §received proper medical care. She is sued in her official and individual capacities.

## III. JURISDICTION AND VENUE

11    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

12    This is an action for redress for violations of the civil rights laws of the United States, the Constitution of the State of Tennessee, Tennessee Common Law as well as Tennessee Statutory Law.

13    This Court has jurisdiction over this action pursuant to Tenn. Code Ann. § 16-10-101.

14    The acts and omissions and the resulting claims in this Complaint occurred at Trousdale Turner Correctional Center, a facility owned and operated by CoreCivic and CoreCivic LLC.   Venue is proper in this Court pursuant to Tenn. Code Ann. § 20-4-101. Because CoreCivc headquarters is located at 10 Burton Hills Blvd, in Nashville, Tennessee in the County of Davidson.

## IV. STATEMENT OF FACTS

15    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

8 |

incidents were subject to an investigation by the Trousdale County Sherriff's Office, but not initially.

23.. Instead of being terminated from her employment, officer Sanders was transferred to the "little building".

24. Eventually, but not initially, officer Sanders was suspended from her position and was eventually indicted by a Trousdale County Grand Jury. She is currently due to appear in Court on October 15, 2018, over a year after the events complained of transpired.

25. According to the indictment, officer Sanders initiated sexual encounter's with at least four other inmates.

26. Based on information and belief and according to the statements made by other correctional officers, shift leaders, and supervisors, taken from the website listed above, officer Sanders initiated sexual encounters with inmates beginning in January of 2017, at least 6 months prior to the events laid out in this Complain involving the Plaintiff, Mr. Wilkins.

27. When rumors surfaced of the sexual relationship with inmates by officer Sanders, which were known to prison officials, Sanders was not disciplined. Rather she was removed to the "little building".

28. Based on information and belief and by Declaration of one other inmate, at least one sexual encounter with Sanders took place near and/or around the "little building".

29. Officers working in the 'little building' can be placed there because of concern of sexual relations with inmates and to remove them, although not fully, from contact with the inmates whom supervisory defendants knew that Sanders was having sex with.

10 | ᵖᵃᵍᵉ

41. Officer Sanders exclaimed "You're going to fuck the shit outta me" "I'm a fucking nympho"

42. Officer Sanders unbuttoned her pants and turned her back blocking the supply closet door as to prevent Mr. Wilkins from getting out and stated, "pull my hair" "I want all the dick you got".

43. Officer Sanders said to Derrick "I am going to fuck all of you"

44. Officer Sanders then directed the other inmates to enter the supply closet.

45. The other inmates of C-Building entered the closet.

46. Officer Sanders engaged in oral, vaginal, and or anal sex beginning with the first inmate(s) to enter the supply closet.

47. Officer Sanders positioned herself to prevent the inmates from escaping the closet as she did with Mr. Wilkins and engaged in having oral, vaginal and/or anal sex with all the inmate workers in C-Building.

48. Officer Sanders engaged in oral, vaginal and/ or anal sex with all the inmates whom she directed out of their cells beginning at 10pm until 4 am.

49. Officer Sanders engaged in oral, vaginal, and/or anal sex with Derrick and each of the other inmates whom she directed to come out to work.

50. Defendant Jacinda Sanders threatened Mr. Wilkins that "he better not tells" anyone about "this" or she would make a report to the parole board to disrupt his chances at parole.

51. Officer Sanders thirst for sexual contact with inmates of C-Building was not quenched until she had oral, anal, vaginal, sex with the inmates in C-building for six hours.

52. At approximately 4am, officer Sanders directed the inmates whom she had engaged in sex with to "return to their cells" "it's count time"

12 |

61.     Trousdale Tuner provides one way for inmates to report abuse or harassment allowing inmates to remain anonymous upon request by providing a phone number ("the 453-hotline") and address for the Nashville Sexual Assault Center of Nashville, Tennessee to inmates.

62.     After "count time" was over and following the sexual abuse by officer Sanders forced upon him, Mr. Wilkins but the hotline did not work.

63.     A PREA Audit Report conducted at Trousdale Turner from July 31-August 1, 2017 and 1st Revisit on November 27, 2017 confirmed Mr. Wilkins account that the 453-hotline did not work "without adding a "*" in front of it.

> PREA Policy 115.51 (b)
>
> CoreCivic-Trousdale Turner Correctional Center provides at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of CoreCivic-Trousdale Turner Correctional Center, and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials, allowing the inmate to remain anonymous upon request. The CoreCivic-Trousdale Turner Correctional Center has provided the phone number and address for the Nashville Sexual Assault Center of Nashville, Tennessee to the inmates. However, during the audit it was determined that the 453-hotline number provided did not work without adding a * before the 453. Therefore, the facility did not meet this part of the standard and corrective action is required.

64.     Following the apprehension of officer Sanders on the above time and date, Assistant Warden and/or PREA Coordinator Yolanda Pittman confronted Mr. Wilkins.

65.     Assistant Warden and/or PREA Coordinator Yolanda Pittman said to Derrick that she would "put rape charges on him"

66.     Upon information and belief, prior to the time that CoreCivic's Officer Sanders began forcing Mr. Wilkins to engage in these non-consensual sexual acts, Defendants, CoreCivic, Washburn and/or Pitman were aware of prior complaints by other male prisoners against female staff in general at CoreCivic/ Trousdale Turner, which complaints include. but were not

14 |

violations of basic privacy rights of Mr. Wilkins by failing to take adequate steps to deter violations of Mr. Wilkins rights, including but not limited to: failing to adequately investigate allegations of sexual harassment, assaults and degrading treatment of male prisoners, failing to provide adequate supervision of staff, failing to adequately discipline staff who violated Plaintiff's rights and/ or failing to adequately train and screen their staff, including investigators and supervisory staff.

72. The management and supervisory practices, rules, procedures and acts of the Defendants were so deficient in their failure to limit the risks of sexual misconduct by female staff against male prisoners as to constitute deliberate indifference to the safety needs of male prisoners under their jurisdiction, including Plaintiff.

73. The deprivation of constitutional rights alleged in this complaint are the result of official policies, customs and practices of Defendants and each of them.

74. Assistant Warden and/or PREA Coordinator said to Derrick that "I have been watching you and that "I will see that you get 50 years for rape of a correctional officer".

75. Derrick was then escorted to the "hole" (Building A-Cell 107)

76. Derrick was held in the segregation unit from August 26, 2017 until September 12, 2017.

77. In order to gain release from the "hole "Assistant Warden/PREA Coordinator Yolanda Pitman assured Mr. Wilkins that she did not want to hear him say later that he had, been involved in having sexual contact with officer Sanders.

CORECIVIC

SEXUAL ABUSE AND RESPONSE

POLICY 14-2.4 (C)(1)(a)(i) states in part:

> AT THIS FACILITY, THE APPLICABLE STATE OR LOCAL LAWS GOVERNING
> SEXUAL ABUSE OF PERSONS IN CUSTODY A IN ADDITION TO PREA ARE:

16 |

84. Officer Sanders, Warden Washburn, Assistant Warden and/or PREA Coordinator Yolanda Pittman and Defendant Pratt, failed to adhere to and/or promulgate and/or ensure the directives within policies, procedures, mandating Employee(s) and Offenders interaction policies and procedures which reads in part:

POLICY AUTHORITY # 305.03-

Interaction between employees and offenders shall be of a professional nature only. All Officers shall be treated equally in a non-discriminatory manner

85. The above-mentioned Defendant(s) Officer Sanders, Warden Washburn, Assistant Warden and/or PREA Coordinator Yolanda Pitman failed to ensure the directives within policies procedure mandating PREA screening, classification, education and monitoring policies and procedures which reads in part:

POLICY AUTHORITY # 502.06

It is the policy of TDOC to provide a safe, humane and appropriately secure environment free from heat of sexual abuse and sexual harassment for all inmates by maintaining a program of prevention, detection, response, investigation and tracking off all alleged and substantiated sexual assault(s). TDOC HAS A ZERO TOLDERANCE FOR INCIDENCES OF SEXUAL ABUSE AND SEXUAL HARASSMENT WITHIN IT'S FACILITIES.

86. The above-mentioned Defendants Officer Sanders, Correct Care Solutions, Administrative and Assistant Warden Yolanda Pittman, Defendant Pratt, failed to adhere to and ensure the directives within policies, procedures which mandated "medical, mental health, victim advocacy, and community support services" for PREA victims which reads in part:

POLICY AUTHORITY # 502.06.3

It is the policy of the TDOC to provide appropriate medical and or mental health, victim advocacy and community support services in accordance with the Prison Rape Elimination Act of 2003.

18 |

## VII. SUPERVISORY DEFENDANTS KNOW THAT MALE PRISONERS ARE AT SUBSTANTIAL RISK OF SEXUAL MISCONDUCT BY TROUSDALE-TURNER FEMALE STAFF BUT FAIL TO TAKE NECESSARY AND APPROPRIATE ACTION.

96. Due to the coercive nature of a prison setting, male prisoners cannot consent to sexual activity with correctional staff. This incapacity to consent is recognized by T.C.A §§ 41-21-241.

97. CoreCivic / Trousdale Turner Correctional Staff subject male prisoners to recurrent and ongoing acts of sexual misconduct. These include forcible rape, sexual intercourse, anal intercourse, oral sexual acts, sexual touching, voyeurism, invasion of personal privacy, demeaning sexual comments, and intimidation to deter male prisoners from reporting such sexual misconduct.

98. Supervisory defendants are responsible for the care, custody and control of male prisoners at the Trousdale Turner Correctional Center, and, through their acts and omissions, supervisory defendants perpetuate the sexual harassment and abuse of male prisoners.

99. Supervisory defendants know that by assigning female staff to male prisons they place male prisoners at substantial risk of experiencing sexual misconduct; that sexual misconduct by female staff is ongoing and recurrent; that victims of sexual abuse or harassment in a correctional setting are unlikely to come forward with complaints of such misconduct; and that defendants' policies and practices are grossly inadequate.

100. Supervisory defendants are aware of the substantial risk of sexual misconduct by female staff upon male prisoners given CoreCivic's actual experience with the Trousdale Turner Correctional Center. On information and belief, many of the complaints of sexual misconduct at the Trousdale Turner Correctional Facility result in criminal prosecution (see above).

20 |

109. Supervisory defendants fail to ensure the training of staff to prevent sexual misconduct by female staff.

110. Upon information and belief, supervisory defendants have failed to enact adequate rules and policies to protect male prisoners from sexual innuendoes, vulgarity, degrading sexual comments, and propositioning and to enforce those rules and policies that exist. For example, female staff are not disciplined for violating these rules. As a result, such behavior by staff is commonplace, resulting in a hostile and sexualized atmosphere in which sexual harassment and abuse of male prisoners by female Correctional Staff is more likely to occur.

111. Female Officers engaging in sexual misconduct with male inmates leave their assigned posts, allow inmates into area where inmates are not permitted, and engage in obvious behavior that is suggestive of inappropriate relationships. Supervisory defendants have failed to take enough action when such activities are observed or to enforce policies intended to identify, address and prohibit these activities.

112. Supervisory defendants often permit female officers and staff unfettered access to private, unmonitored areas such as kitchen store rooms, storage closets, slop sink areas, and laundry areas where sexual abuse of male prisoners is more easily accomplished.

113. Supervisory defendants fail to increase the supervision of female correctional staff about whom they have received complaints of sexual misconduct by male prisoners. Such staff are still permitted unmonitored contact with male prisoners, often still with virtually unfettered access to private unmonitored areas without additional staff being assigned to observe their actions.

VIII. SUPERVISORY DEFENDANTS SYSTEM FOR REPORTING AND INVESTIGATING COMPLAINTS OF SEXUAL MISCONDUCT IS GROSSLY INADEQUATE.

114. Supervisory defendants' system for the reporting and investigation of sexual misconduct is grossly inadequate to prevent and remedy ongoing sexual misconduct because it relies almost

22 |

misconduct in a confidential manner, the perpetrators of misconduct or their colleagues learn of the investigations and inflict harassment or retaliation upon male prisoners. When staff promise confidentiality to male prisoners, they often violate their commitment.

121. Supervisory defendants fail to take steps enough to protect male prisoners who complain of experiencing sexual misconduct by female staff from retaliation or intimidation. These males often remain the same prison and can even remain in the same housing area as the perpetrator of the misconduct.

122. Pursuant to supervisory defendants' policies and/or practices, male prisoners who complain of sexual misconduct by staff or who are questioned during an investigation are often questioned in a hostile, demeaning and threatening manner.

123. Supervisory defendants' policies and/or practices threat complaints by male prisoners of sexual misconduct by staff in a systematically biased fashion. An allegation of sexual misconduct based exclusively or primarily on a statement of a male prisoner will not be given credence, will not be found to be substantiated, and will not result in any action being taken against the staff person, even if credible and even if supported by other witnesses.

124. Supervisory defendants' investigations do not give adequate weight to indicia of sexual misconduct short of physical evidence. Such indicia include staff persons being seen out of place; staff persons allowing inmates into areas where inmates are not permitted; staff persons engaging in behavior suggestive of an inappropriate relationship; and staff giving contradictory statements to investigators.

125. Supervisory defendants; investigators fail to give adequate weight to the credibility of witnesses. Upon information and belief, the investigator assigned to a complaint of sexual

24 |

in their cells 23 hours a day and being deprived of their personal property and most prison privileges. Alternatively, they may be placed in administrative segregation under similarly harsh and restrictive conditions. Either placement means the loss of participation in all program and job assignments, as well as drug and alcohol treatment. Alternatively, they may be placed in protective custody, with severe restrictions on both out-of-cell time, movement within the prisons, while the perpetrator is permitted to continue working in the same assignment. These transfers may disrupt contact with children and family, and participation in program and job assignments. Because disciplinary history, placement in administrative segregation and program and job assignments are considered by the merits board and parole board, a male prisoner at Trousdale Turner who complains about sexual misconduct risks lengthening his incarceration.

130. Supervisory defendants do not consistently conduct investigations into claims of sexual harassment and abuse in a prompt manner, potentially subjecting both the male prisoner who has complained and the other male prisoners to continued abuse. Once a male prisoner notifies defendants that he has been subjected to abuse, weeks can pass before an investigation is begun. Once it is begun, even when unambiguous proof of misconduct is offered, action may not be promptly taken against staff.

## IX. SUPERVISORY DEFENDATS FAILE TO PROVIDE NECESSARY OR ADEQUATE MENTAL HEALTH TREATMENT TO MALE PRISONERS WHO COMPLAIN OF SEXUAL MISCONDUCT BY CORECIVC/TROUSDALE TURNER CORRECTIONAL CENTER STAFF

131. CoreCivic/ Trousdale Turner Correctional Center staff has failed to provide minimally adequate mental health care of male prisoners who come forward to complain about sexual misconduct by staff.

132. Male prisoners who are subjected to sexual harassment or abuse by female staff experience harmful consequences and require appropriate mental health care. Males with a

26 |

138. While the plaintiff was in her custody, care and control, defendant Jacinda Sanders engaged in sexual contact with an inmate with the plaintiff against his will and without his consent in a sexual manner in violation of Tenn. Code Ann. 39 16- 408, thereby inflicting rape on the plaintiff in violation of Tenn. Code Ann. 39-13-503, and causing him damages

139. As a direct and proximate result of defendant Jacinda Sanders aforesaid acts and conduct and the injuries resulting there from, Mr. Wilkins sustained physical injury and mental pain and suffering.

## THIRD CAUSE OF ACTION

### Negligence
### (Against all Defendants)

140. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 139 hereof, as if fully set forth herein.

141. Defendants CoreCivic, Washburn, Pitman and Pratt negligently supervised. and retained Sanders, as well as other prison employees, *inter alia* by (a) failing to care for and ensure the safety of Plaintiff while at Trousdale Turner Correctional Center (b) failing to properly train, supervise, discipline, retain and or discharge their employees / agents and/ or representatives: (c) placing female officers in supervisory positions over every aspect of the plaintiff's confinement where they were in positions of authority and could use that authority to harass, intimidate and coerce said male inmates such as Mr. Wilkins into unwanted sexual assaults; and (d) were otherwise negligent in their care and treatment of Plaintiff. As a direct and proximate result Mr. Wilkins has sustained general and special damages.

142. The injuries alleged in this cause of action are the direct result of official policy, custom and practices of Defendants and each of them is individually and/ or jointly and severally liable

28 |

149. To plaintiff for his physical injury, emotional distress and other compensatory and punitive damages caused thereby.

150. Defendants owed a duty to Mr. Wilkins to exercise reasonable care in holding, incarcerating and guarding Plaintiff, which duty was breached by each of these defendants, thereby directly causing the Plaintiff loss and damage, including physical injury and mental pain.

151. As a direct and proximate result of the negligence of the defendants, and the injuries the Plaintiff sustained, the Plaintiff is entitled to damages.

## FIFTH CAUSE OF ACTION

### NEGLIGENT RETENTION AND SUPERVISION
(Against Russell Washburn CoreCivic, Inc. and Jacinda Sanders)

152. Plaintiff realleges and incorporates as if fully stated herein each allegation contained above and incorporates the same herein by this reference as though set forth in full.

153. Defendant Russell Washburn has a duty to retain employees who are fit and competent, to supervise his employees, and to implement measures to protect third persons from the predictable and foreseeable risks posed by his employees.

154. Defendant Washburn knew, or in the exercise of reasonable diligence, should have known, that the Plaintiff's supervisory guards were incompetent and unfit to perform the duties for which they were employed, and that undue risks to persons such as Plaintiff would result by way of their inappropriate conduct. The conduct of Plaintiff's supervisors occurred in their capacity as employees of Defendant CoreCivic Inc. and/or Russell Washburn and was done for the benefit of their own pleasure acting with impunity.

155. Defendant CoreCivic Inc. and Russell Washburn were negligent by breaching the duty of care by retaining and failing to supervise Plaintiff's supervisory correctional officers, who had

31

Derrick Wilkins
HCCF/ TDOC # 552915
2520 Union Springs Road
P.O. Box 549
Whiteville Tn. 38075-0549

 

Chief Deputy Clerk, Vicki Kinkade
Broadway Rm 800  U.S. Cthse
Nashville TN. 37203-0909

APR 09 2020
US D̶ ̶ ̶ ̶ ̶ JRT
MID DIST TENN

Hardeman County
Correctional Facility
Outgoing Legal Mail

JE101



CCA/Hardeman County
Has Neither Inspected Nor

APR 07 2020

Censored And Is Not
Responsible For The Content